

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| **CINDY L. LACAZE** | **CIVIL ACTION NO. 03-2202** |
| **VERSUS** | **JUDGE HICKS** |
| **W.W. GRAINGER, INC.** | **MAGISTRATE JUDGE HORNSBY** |

## MEMORANDUM RULING

Pending before the Court are cross motions for summary judgment. [Doc. Nos. 90 & 92]. Plaintiff, Cindy LaCaze ("LaCaze"), has filed claims of disability discrimination pursuant to federal and state law against W.W. Grainger, Inc. ("Grainger"), the company she was assigned to through a temporary agency for several months in 2002. Both sides have filed motions regarding multiple issues. For the following reasons, the Court grants the motion filed by defendant Grainger [Doc. No. 90] and denies the motion filed by plaintiff LaCaze [Doc. No. 92].

## BACKGROUND[1]

Plaintiff, Cindy LaCaze, has muscular dystrophy and is confined to a wheelchair. [Π Statement of Uncontested Material Facts ("SUMF"), ¶ 1]. LaCaze was recruited by her brother, Roland Juneau, Jr., a Grainger manager, to work in Grainger's clothing store at the Shreveport, Louisiana General Motors ("GM") plant. [LaCaze Affidavit, π Exhibit A, ¶3].

---

[1]The Court finds that the exhibits have not been numbered in accordance with "Instructions", Paragraph 10, part (d) of the Scheduling Order [Doc. No. 14]; therefore, the Court will reference exhibits as best as can be identified.

LaCaze was hired through Kelly Temporary Services ("KTS") as a temporary employee and assigned to work as a clerk at Grainger's clothing store. [LaCaze Deposition, Δ Exhibit B, p. 17]. LaCaze filled the position of Jonathan Williams ("Williams"), a permanent Grainger employee, who was temporarily moved to the industrial store after the departure of another employee in that store. [Thomas Lab Deposition, Δ Exhibit D, pp. 28 and 30; Roland Juneau, Jr. Deposition, π Exhibit E, p. 41]. LaCaze began work in the clothing store on April 29, 2002. [LaCaze KTS Personnel File, π Exhibit W].

KTS provided LaCaze's direct benefits, including compensation, during the period of time she worked at Grainger's clothing store. [LaCaze Deposition, Δ Exhibit B, pp. 10, 13-14]. However, Grainger controlled her hours, duties and rate of pay. [LaCaze Affidavit, π Exhibit A, ¶ IV]. Grainger also arranged LaCaze's pay raise through KTS. [Id., at ¶ V; Juneau Deposition, π Exhibit E, p. 43].

LaCaze received assistance in performing her job duties, including using a walker and a grabber. [Williams Deposition, π Exhibit F, p. 37; Lab Deposition, π Exhibit L, p. 47; Thelma Koerner Deposition, Δ Exhibit 5, p. 28]. The parties dispute if LaCaze was fully capable of completing her essential job duties even with the assistance provided. (Compare, π SUMF ¶¶ 15-17; and Δ Response to π SUMF ¶¶ 15-17).

LaCaze was supervised by Thomas Lab ("Lab"), a Grainger manager whose office is located in Detroit, Michigan. On July 2, 2002, Lab and LaCaze had a conversation about Lab's three concerns with LaCaze's employment: (1) her receiving preferential treatment from her brother, Roland Juneau; (2) her ability to do her work confined to a wheelchair; and (3) safety issues concerning her wheelchair inside the plant. [Lab Deposition, π Exhibit L, pp. 41-42]. Lab also told LaCaze that Grainger would be hiring a manager for

the industrial and clothing stores and eliminating her position. [LaCaze Deposition, Δ Exhibit B, p. 31 - 32, and 37]. Lab told LaCaze that her employment would be terminated in August. Id. On July 10, 2002, LaCaze wrote Lab a letter regarding their July 2nd phone conversation. [Δ Exhibit T]. In her letter, she acknowledges that Lab told her he would be hiring a manager and asks to keep her job until another became available. Id.

On July 24, 2002, Lab had another conversation with LaCaze at which time he explained that although some of his concerns were eliminated, he was still going to terminate her when the on-site manager began work. [Lab Deposition, Δ Exhibit D, p. 50-51; LaCaze Deposition, Δ Exhibit B, p. 37].

On August 14, 2002, plaintiff's counsel Nelson Cameron wrote a letter to Lab on behalf of LaCaze. [Π Exhibit B]. Cameron acknowledged that LaCaze was scheduled to be terminated around the end of August 2002. Cameron stated that he had been retained and warned that any action taken against her would be considered retaliation for her asserting her rights under the Americans with Disabilities Act. Cameron asked for LaCaze to remain on the job as a permanent employee. Id.

As early as December 2001, Grainger began discussions with GM about expanding the scope of Grainger's services and adding on-site management to the clothing and industrial stores. [Mark Fisher Deposition, Δ Exhibit H, pp. 8-11 and 20-23]. Prior to Plaintiff's assignment, Grainger was preparing to restructure and hire on-site managers for each of its 12 to 15 automotive locations. [Lab Deposition 6/29/04, Δ Exhibit D, pp. 10 and 53; Perkins Deposition 4/29/04, Δ Exhibit E, p. 10; Steve Borre Deposition, Δ Exhibit F, pp. 4-5, 12-13; Perkins Deposition 8/24/04, Δ Exhibit G, p. 6; Lab Deposition 8/17/04, Δ Exhibit C, pp. 7-8]. By mid-2003, all but one or two of the automotive locations had hired on-site

managers. [Lab Deposition 8/17/04, Δ Exhibit C, pp. 9-17; Lab Deposition 6/29/04, Δ Exhibit D, pp. 6-9].

Rick Perkins ("Perkins") was contacted in early June of 2002 about applying for a new management position at Grainger's GM location. [Perkins Deposition, Δ Exhibit E, p. 10]. Perkins interviewed on July 24, 2002 and was hired soon thereafter. [Lab Deposition, Δ Exhibit D, p. 63-64]. He began work around September 3, 2002. [Perkins Deposition, π Exhibit N, p. 3].

Grainger eliminated the temporary clothing store position when it hired Perkins as the full-time, on-site manager for both the clothing and industrial stores. [Lab Deposition, Δ Exhibit D, p. 91; Perkins Deposition, Δ Exhibit E, pp. 16-17]. Perkins is the only permanent employee that has been hired to work in the clothing or industrial stores since Plaintiff's position was eliminated. [Perkins Deposition, Δ Exhibit E, p. 13, ln. 22-24; Roland Juneau, Jr. Deposition, Δ Exhibit A, p. 36]. Plaintiff admits that she was not qualified for the on-site manager position filled by Perkins. [LaCaze Deposition, Δ Exhibit B, p. 38].

After Perkins began his duties as the on-site manager, Jonathan Williams was moved from the industrial store back to his previous position in the clothing store and Plaintiff's temporary position was eliminated. [Perkins Deposition, Δ Exhibit E, pp. 16-17; Lab Deposition, Δ Exhibit D, pp. 65, 91-92]. September 16, 2003 was LaCaze's final day at Grainger. [π's EEOC Charge, Δ Exhibit S]. Seven months later, in April 2003, Williams was moved back to the industrial store, because of an increase in business. [Perkins Deposition, Δ Exhibit E, p. 19]. Carol Moore was hired as a temporary employee through Manpower to work in the clothing store. [Id., p.20-21]. By that time, LaCaze had opened

-4-

a hair salon and did not apply for the new temporary position. [LaCaze Deposition, Δ Exhibit B, pp. 41, 50 & 93].

LaCaze filed a charge by affidavit to the EEOC on October 9, 2002. [π Exhibit S]. A formal charge was submitted to the EEOC on February 26, 2003, alleging disability discrimination. [Δ Exhibit S]. The Charge of Discrimination did not allege that Grainger retaliated against LaCaze, that she voiced complaints about disability discrimination, or that she believed retaliation had anything to do with her termination. She did not check the retaliation box provided on the EEOC charge form. Id. On LaCaze's request, the EEOC mailed a "Notice of Right to Sue" terminating the processing of the charge. [Attachment to π's Complaint, Doc. No. 1]. This document is dated as mailed on October 31, 2003. Id. Also submitted is an unsigned and undated EEOC "Dismissal and Notice of Rights." [π Exhibit O]. This document states that "CP was not an employee of the Respondent." Id. This appears to be the EEOC's reason for the termination of processing. Plaintiff then filed this suit on December 2, 2003. [Doc. No. 1].

## LAW AND ANALYSIS

I. **Summary Judgment Standard**

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); New York Life Ins. Co. v. Travelers Ins. Co., 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary

judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552, 91 L. Ed. 2d 265 (1986). See also Gunaca v. Texas, 65 F.3d 467, 469 (5th Cir. 1995). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting Celotex, 477 U.S. at 323-25, 106 S. Ct. at 2552). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." Little, 37 F.3d at 1075.

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. Wallace v. Texas Tech Univ., 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. Little, 37 F.3d at 1075; Wallace, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." Wallace, 80 F.3d at 1048 (quoting Little, 37 F.3d at 1075). See also S.W.S. Erectors, Inc. v. Infax, Inc., 72 F.3d 489, 494 (5th Cir. 1996). The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." McCallum Highlands v. Washington Capital Dus, Inc., 66 F.3d 89, 92 (5th Cir. 1995), as revised on denial of rehearing, 70 F.3d 26 (5th Cir. 1995). Unless there is sufficient evidence for a jury to return a verdict in the

nonmovant's favor, there is no genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-51, 106 S. Ct. 2505, 2511, 91 L. Ed. 2d 202 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id., 477 U.S. at 248, 106 S. Ct. at 2510.

Because employment discrimination claims "involve nebulous questions of motivation and intent," summary judgment is generally an inappropriate tool for resolving these cases. Thornbrough v. Columbus & Greenville R.R. Co., 760 F.2d 633, 640-41 (5th Cir. 1985) (citations omitted). However, if Plaintiff fails to establish a prima facie case, Bauer v. Albermarle Corp., 169 F.3d 962, 966 (5th Cir. 1999), or if defendant presents strong evidence of a legitimate, nondiscriminatory reason for its actions and the plaintiff is unable to counter with additional evidence of pretext or motivating factor, summary judgment may be properly granted. Rachid v. Jack in the Box, Inc., 376 F.2d 305 (5th Cir. 2004). With these principles in mind, we now turn to a review of the specific claims at issue.

II. **LOUISIANA STATE LAW CLAIMS**

A. **Employer Status**

The parties briefed the issue of whether Grainger is an employer under Louisiana state law. The Court finds that this is an issue of state law that is not clear. Considering

the remainder of this ruling, the Court declines to decide the issue of employer status under Louisiana law in this matter. For purposes of the cross motions for summary judgment, the Court will assume that Grainger was LaCaze's employer.

B.  **Title 51 Claims**

The Court finds that Title 51 of the Louisiana Revised Statutes does not provide a cause of action for disability discrimination or retaliation. Smith v. Parish of Wash., 318 F. Supp. 2d 366 (E.D. La. 2004). The Smith court, acknowledged "that the absence of a broad anti-retaliation provision in the employment discrimination context is regressive social policy and illogical." Id. at 373. However, the court ultimately found that in the 1997 revisions, the Louisiana legislature removed employment discrimination claims from Title 51 in order to consolidate all employment discrimination statutes under Title 23. Id. Although Louisiana law now only provides retaliation claims in cases of age and sickle cell discrimination, the Court agrees with the reasoning in Smith. Therefore, plaintiff's claims under Title 51 are dismissed.

C.  **Title 23 Claims**

Plaintiff also alleges claims under Title 23 of the Louisiana Revised Statues. Because Louisiana's anti-discrimination statutes are similar in scope to the federal anti-discrimination prohibitions in Title VII of the Civil Rights Act of 1964, Louisiana courts have routinely looked to federal jurisprudence for guidance in interpreting state law. Mayes v. Office Depot, Inc., 292 F. Supp. 2d 878 (W.D. La. 2003); LaBove v. Raftery, 802 So. 2d

566 (La. 11/28/01). Plaintiff has the same burden on her prima facie case in Louisiana law as in Title VII. Aucoin v. Kennedy, 355 F. Supp. 2d 830, 845 (E.D. La. 2004). The Court finds below that LaCaze has not met her prima facie case pursuant to the ADA. Likewise, the Court finds that plaintiff has not met her prima facie case pursuant to Title 23. Therefore, summary judgment is proper and LaCaze's claims pursuant to Title 23 are dismissed.

## III. Claims Pursuant to ADA[2]

LaCaze alleges that Grainger violated the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq. by refusing her overtime, failing to permanently hire her, and terminating her because of her disability. Under the modified McDonnell-Douglas analysis, plaintiff must first demonstrate a prima facie case of discrimination. The defendant must then articulate a legitimate, non-discriminatory business reason for the adverse action. It is then the plaintiff's burden to show the offered reason to be pretext for discrimination by showing: (1) that the reason is untrue; or (2) that discrimination was a motivating factor for the decision. Gowesky v. Singing River Hosp. Sys., 321 F.3d 503 (5th Cir. 2003), cert. denied, 540 U.S. 815, 124 S. Ct. 66, 157 L. Ed. 2d 30 (2003); Rachid v. Jack in the Box, Inc., 376 F.2d 305 (5th Cir. 2004) The defendant must then show that the same adverse decision would have occurred regardless of the discriminatory animus. Rachid, 376 F.2d 305.

---

[2]Defendant presumes that Grainger is an "employer" under federal law for the purposes of the motion for summary judgment. [Memorandum, n. 6, Doc. No. 90].

## A. LaCaze's Prima Facie Case

LaCaze has not met her burden of demonstrating a prima facie case by showing that: (1) she suffers from a disability; (2) she was qualified for the job; (3) she was subject to adverse employment action; and (4) she was replaced by a non-disabled person or was treated less favorably than non-disabled employees. Rachid, 376 F.2d 305; Gowesky, 321 F.3d 503. The Court will assume for the purposes of this motion: (1) that LaCaze is disabled within the meaning of the ADA; and (2) that LaCaze's termination from her assignment at Grainger constitutes an adverse action. However, LaCaze must still show that she was qualified for the position and that she was replaced by a non-disabled person.

### 1. LaCaze was not replaced by a non-disabled person.

LaCaze contends that she was replaced by Jonathon Williams, a non-disabled person. Grainger rebuts this allegation stating that LaCaze was hired to temporarily fill Williams's position. Grainger further contends that Williams's return to his regular position does not constitute a "replacement". Williams was placed in the industrial store after the departure of another employee because Williams had industrial experience. [Juneau Deposition, π Exhibit E, p. 41]. LaCaze was hired through KTS to fill Williams's vacancy in the clothing store. Several months later, Grainger hired an on-site manager, with duties in the industrial store, and moved Williams back to his position in the clothing store. [Lab Deposition, Δ Exhibit D, p. 63-64, 91]. It is uncontested that Williams is not disabled.

The Court finds that LaCaze was not replaced by Williams. LaCaze was a temporary employee assigned to fulfill the specific need of covering Williams's position in

the clothing store. After Perkins was hired, and Williams returned to the clothing store, LaCaze's temporary employment was no longer needed. The Court declines to fashion a rule of law that punishes an employer for hiring a temporary employee that happens to be disabled. Using the plaintiff's reasoning, no employer would be able to hire a temporary employee that was a member of any protected class without fear of being sued when the position was no longer needed, in this case when a permanent employee returned to the position which had been filled by the temporary employee.

LaCaze also attempts to show that she was replaced by Carol Moore. In April of 2003, Williams was again moved to the industrial store because of an increase in business in the industrial store. [Perkins Deposition, Δ Exhibit E, p. 41]. Moore was assigned as a temporary employee to the clothing store seven months after the termination of LaCaze. Id. at 19. Although LaCaze knew that another position may open in the store after the first of the year, she did not even apply for the position Moore was assigned. [LaCaze Deposition, Δ Exhibit B, pp. 41, 50 & 93]. The Court finds that LaCaze was not replaced by Moore.

The Court finds that LaCaze has not met her prima facie case as she has not shown that she was replaced by a non-disabled person. Therefore, the Court finds that summary judgment is appropriate on this claim as a matter of fact and law.

### 2. LaCaze was not qualified for any available positions.

LaCaze also asserts a "failure to hire" claim. In order to assert this claim, LaCaze must show that she (1) applied for (2) an open position and (3) that she was qualified for the position. Janey v. N. Hess Sons, Inc., 268 F.Supp.2d 616 (D. Md. 2003). Plaintiff

admits that she was not qualified for the position of on-site manager and that she never applied for any other available position, including the temporary position filled by Moore as discussed above. [LaCaze Deposition, Δ Exhibit B, pp. 41, 50 & 93]. Plaintiff's contention that she "applied" for jobs that were not yet in existence does not satisfy her burden of proof. Furthermore, she concedes that she would have needed additional training, thus she was not even qualified for the non-existent positions. [LaCaze Deposition, Δ Exhibit B, p. 38]. Grainger is not required to create positions. LaCaze's "failure to hire" claim fails at her prima facie case, therefore, this claim is dismissed.

### 3. Denial of Overtime is Not Evidence of Disparate Treatment

Although the Court has already assumed the "termination" constituted an adverse action for the purposes of these motions, the Court also finds that LaCaze's contention that she was denied overtime pay is not an adverse action. LaCaze does not contest that she was paid time and a half for the overtime hours she actually worked at Grainger. However, LaCaze alleges that she was denied the opportunity to work overtime in August of 2002. [LaCaze Affidavit, π Exhibit A, ¶ 11]. Grainger contends that LaCaze was denied requested overtime work because she was not needed. [Lab Affidavit, Δ Exhibit O]. Furthermore, Plaintiff has not shown that other temporary employees were allowed to work overtime while she was not. The Court will not second guess the business decisions of Grainger. Walton v. Bisco Indus. Inc., 119 F.3d 368, 372 (5th Cir. 1997).

### B. Same Decision Regardless of Disability

Although the Court has found that LaCaze has not met her prima facie case, the Court further finds that even if plaintiff established a prima facie case and prevailed through the remaining burdening shifting, in the final analysis, Grainger prevails. Even if LaCaze could demonstrate a prima facie case, and then show that Grainger's legitimate, non discriminatory business reason was pretext or at least a motivating factor in her "termination", Grainger may still prevail by establishing that the same action would have occurred regardless of her disability. Rachid, at 312; see also, Machinchick v. PB Power, Inc., 398 F.3d 345 (5th Cir. 2005).

Grainger has provided sufficient evidence to prove that regardless of LaCaze's disability, Perkins would have still been hired as the on-site manager and the need for a temporary employee in the clothing store would have still been eliminated. Grainger hired managers in multiple locations across the country. Lab told LaCaze that she would not be needed after the manager was hired. [LaCaze Deposition, Δ Exhibit B, p. 31-32, 37]. Perkins began work as the on-site manager right before LaCaze's employment ended. [Lab Deposition, Δ Exhibit D, p. 91]. Williams moved back to the clothing store and Perkins worked in the industrial store. Id. No one was hired to replace LaCaze. The Court finds ample evidence in the record that indicates that the same action would have occurred if plaintiff not been disabled. Furthermore, the courts are not in the business of second guessing business judgments. Walton v. Bisco Indus. Inc., 119 F.3d 368, 372 (5th Cir. 1997).

### C. Conclusion of ADA Claims

The Court finds that at the conclusion of all the burden shifting, Grainger prevails. The Court finds that regardless of LaCaze's disability, Perkins was hired, Williams moved back to his position, and Grainger no longer needed a temporary worker. No one was hired to replace LaCaze. Perkins was hired, in part, to cover the industrial store, allowing Williams to return to his position in the clothing store. Plaintiff only provides self serving conclusory allegations. Plaintiff has insufficient evidence to survive summary judgment on her ADA claim. Therefore, summary judgment is proper as a matter of fact and law and LaCaze's ADA claims are dismissed.

## III. RETALIATION

LaCaze also alleges claims of retaliation under federal and Louisiana state law. Grainger contends that LaCaze can not prove a retaliation claim and prescription has run on any possible claim. LaCaze argues that her retaliation claims relate back to her original EEOC claim and, therefore, have not prescribed.

### A. EEOC Charge & Prescription

LaCaze's EEOC charge does not indicate a charge of retaliation. [Δ Exhibit S]. LaCaze argues that the claim relates back to the original EEOC charge because it arose out of the same facts. LaCaze amended her suit in March 2004 to add retaliation claims based on the following actions: (1) her attorney protesting her approaching termination; and (2) her personal protests of her approaching termination. [Doc. No. 11].

In order for a new claim to relate back to the EEOC charge, the facts supporting the new retaliation claim must be essentially the same as the facts supporting the original EEOC charge. Galvan v. Bexar County, 785 F.2d 1298 (5th Cir. 1986); Sanchez v. Standard Brands, Inc., 431 F.2d 455 (5th Cir. 1970). LaCaze cites several cases supporting ancillary jurisdiction over retaliation claims that "grow out of" earlier charges. See, Green v. La. Casino Cruises, Inc., 319 F. Supp. 2d 707, 710 (M.D. La. 2004). Retaliation resulting from the filing of an EEOC charge does not have to be charged again. See, Gupta v. East Texas State University, 654 F.2d 411 (5th Cir. 1981). However, Green held that the court had ancillary jurisdiction regardless of whether the retaliation was a result of the filing of the EEOC charge, as long as the claims were based on the same operative facts.

In this case, LaCaze's "protected activities" are two letters, one from herself and one from her attorney to Grainger, concerning the fact that she had been told that her employment would be ending. Both of these letters were written before her final day at Grainger. Her EEOC charging documents were filed after her last day at Grainger. The alleged retaliation is her "termination." Therefore, the alleged retaliation is not a result of LaCaze's filing the EEOC charge. Furthermore, the plaintiff had sufficient time to include the alleged retaliation claim in the EEOC charging documents. However, the Court finds that the current law in the Fifth Circuit allows the retaliation claim because it arises out of the same set of operative facts as her disability discrimination charge. Therefore, the Court finds that prescription has not run on the retaliation claims.

B. **Prima Facie Case under Title VII**

LaCaze can not meet her prima facie case pursuant to the ADA retaliation provisions, 42 U.S.C. § 12203. LaCaze must show that: (1) she engaged in a protected activity; (2) there was an adverse employment action; and (3) there is a causal link between the protected activity and the adverse action. Ackel v. National Communications, Inc., 339 F.3d 376 (5th Cir. 2003). LaCaze argues she has demonstrated a prima facie case by showing: (1) the protesting of her forthcoming termination both by herself and her lawyer were protected activities; and (2) her termination and not providing her the opportunity to work overtime are adverse actions. However, even assuming that the first two prongs are met, LaCaze can not show a causal link between the protected activities and the adverse action.

Lab told LaCaze that he was going to terminate her before her first protest letter and before the letter from her attorney. On July 2, 2002, Lab first told LaCaze that she would no longer be needed after the on site manager was hired. [LaCaze Deposition, Δ Exhibit B, p. 31 - 32, and 37]. LaCaze sent her letter to Lab on July 10, 2002. [Δ Exhibit T]. Her attorney, Nelson Cameron, sent a letter to Lab on August 14, 2002. [π Exhibit B]. The termination can not possibly be a _result_ of the letters sent to Lab protesting her forthcoming termination. Plaintiff engaged in no protected activity prior to being informed that Grainger would be eliminating her position in the clothing store.

LaCaze also alleges that she was allowed to work overtime once before her letter was sent, but then denied the ability to work overtime after the letter was sent. LaCaze was allowed to work five (5) hours of overtime during the week of July 14. [Employee Earnings Summary, Π Exhibit W]. She requested overtime work again sometime in August

-16-

of 2002. [Lab Affidavit, Δ Exhibit O]. Although LaCaze's second request did occur after she sent her letter, both requests for overtime were after Lab first told LaCaze that she would no longer be needed. Furthermore, the Court finds that one instance of overtime in a period of approximately 10 weeks does not indicate a prior willingness that was eliminated after she sent her protest letter. Therefore, LaCaze can not demonstrate a prima facie case of retaliation and the claim is dismissed.

### C.     Retaliation Under Louisiana Law

As discussed supra in Part II.B., there is no longer a claim for retaliation in disability discrimination under Title 51 of the Louisiana Revised Statutes. Nevertheless, Louisiana retaliation law is analogous to federal law. Therefore, even if the claims were not prescribed, plaintiff's claims fail on the merits as discussed above.

### CONCLUSION

After reviewing the entire record, the Court finds that there are no genuine issues of material fact in dispute, and that summary judgment is proper as a matter of fact and law. LaCaze has not met her prima facie case pursuant to the Americans with Disabilities Act or Louisiana employment discrimination statutes. LaCaze can not meet her burden with respect to her retaliation claims. Grainger is entitled to summary judgment in its favor. Therefore:

IT IS ORDERED that Defendant's Motion for Summary Judgment [Doc. 90] shall be **GRANTED**.

IT IS FURTHER ORDERED that Plaintiff's Motion for Summary Judgment [Doc. 92] shall be **DENIED**.

IT IS FURTHER ORDERED that Plaintiff's Complaint [Doc. 1] shall be **DISMISSED** in its entirety.

Shreveport, Louisiana, this 7th day of July, 2005.

S. MAURICE HICKS, JR.
UNITED STATES DISTRICT JUDGE